[S. F. No. 8765. In Bank.—October 4, 1918.]

WILL M. BEGGS, Petitioner, v. SUPERIOR COURT OF THE COUNTY OF SANTA CLARA et al., Respondents.

CRIMINAL LAW—AFFIRMANCE OF JUDGMENT—SUSPENSION OF SENTENCE—LACK OF JURISDICTION.—The superior court is without jurisdiction to act upon a petition for suspension of sentence pronounced upon a convicted person after affirmance of the judgment of conviction upon appeal.

APPLICATION for a Writ of Mandate originally made to the Supreme Court to compel the Superior Court to suspend the execution of sentence in a criminal action. Denied.

The facts are stated in the opinion of the court.

A. H. Jarman, R. P. Henshall, R. C. McComish, and James P. Sex, for Petitioner.

Arthur M. Free, and C. C. Coolidge, for Respondents.

MELVIN, J.—An alternative writ of mandate was issued to the superior court upon application of petitioner, who had made a request to the superior court for the suspension of the execution of sentence, such request having been denied upon the ground of lack of jurisdiction in that court to entertain it.

The sole question before this court relates to the power of the superior court to act upon a petition for suspension of sentence pronounced upon a convicted person after affirmance of the judgment of conviction upon appeal.

Petitioner was convicted of the crime of extortion. Upon appeal the judgment was affirmed. Upon the going down of

the *remittitur* he made application, under section 1203 of the Penal Code, for suspension of the execution of the sentence, and his counsel here contend that under the terms of that section the superior court has jurisdiction to determine, upon the merits, whether or not sentence shall be suspended at any time between the conviction of a defendant and his surrender by the sheriff to the warden of the penitentiary in which the commitment as originally made directed his imprisonment.

Section 1203 of the Penal Code, by reason of which, as petitioner asserts, he is entitled to the relief for which he prays, was traced in its historical development by the learned judge of the superior court to whom application for suspension of judgment was made. He pointed out the following facts: As originally enacted in 1872 the section provided that a court in its discretion could consider, before pronouncing judgment, any facts or circumstances in aggravation or mitigation of the punishment about to be imposed. As amended in 1903 the law empowered the court to suspend the imposing of sentence where the punishment was imprisonment alone and to suspend *execution* of the sentence of imprisonment and to place the defendant on probation, to the end that he might earn the money with which to pay his fine where the punishment for the offense was both fine and imprisonment. By the amendment of 1911 the court was authorized in any case not only to suspend sentence but to suspend the execution of sentence. But the section does not confer an unrestrained and unlimited power upon the trial court. It deals with and provides machinery for probation of a defendant where the court, in the exercise of a sound discretion, decides to suspend the imposing or the execution of sentence. The learned judge of the superior court, upon consideration of the history and development of this part of the law, therefore correctly concluded that the section under analysis is one dealing with the subject of probation; that it is limited accordingly by any other provision relating to the time in which, after conviction, a defendant may seek probation; and that section 1191 of the Penal Code contains such a limitation. Section 1191, so far as pertinent to this question, is as follows: "After a plea or verdict of guilty, or after a verdict against the defendant on a plea of former conviction or acquittal, or once in jeopardy, the court must appoint a time for pronouncing judgment which must not be less than two, nor more than five

days after the verdict or plea of guilty; provided, however, that the court may extend the time not more than ten days for the purpose of hearing or determining any motion for a new trial, or in arrest of judgment; and provided, further, that the court may extend the time not more than twenty days in any case where the question of probation is considered in accordance with section 1203 of this code, provided, however, that upon the request of the defendant such time may be further extended not more than ninety days additional.'' It is clear from the foregoing that probation is a subject which must be considered during the brief period after conviction, which is limited by the section from which the above quotation is taken, and that the court's power to suspend the execution of sentence under section 1203 of the Penal Code expires with the pronouncing of a judgment followed or accompanied by no order of suspension. It is to be noted that each of these two sections opens with the phrase ''After a plea or verdict of guilty.'' In the earlier section this expression, undoubtedly, refers to the time before judgment, and in the latter the same words in our opinion indicate the same period.

That the authority of the court under said section 1203 does not attach anew to the judgment after affirmance thereof on appeal is evident from the language of sections 1263 and 1265 of the Penal Code which are mandatory in their terms. The former provides that ''If a judgment against the defendant is affirmed, the original judgment must be enforced,'' and the latter is as follows:

''After the certificate of the judgment has been remitted to the court below, the appellate court has no further jurisdiction of the appeal or of the proceedings thereon, and all orders necessary to carry the judgment into effect must be made by the court to which the certificate is remitted.''

It is clear, from the reading of these provisions, that after a judgment of conviction in a criminal case has been affirmed by an appellate tribunal judicial power to alter or suspend it has ceased.

The petition for a peremptory writ of mandate is denied and the alternative writ is dismissed.

Shaw, J., Sloss, J., and Angellotti, C. J., concurred.

WILBUR, J., Concurring.—I concur in the judgment on the ground that the express provisions of section 1263 of the

Penal Code, require, in the event of an affirmance, that "the original judgment must be enforced." The judgment required that the petitioner be imprisoned in the state's prison. The purpose of suspending the execution and granting probation would be to secure the reform of the petitioner, and the consequent dismissal of the charge against him. (Sec. 1203, subd. 5.) In that event he would never have the judgment enforced against him.

RICHARDS, J., *pro tem.,* Dissenting.—I dissent. I cannot agree with the conclusion arrived at by Mr. Justice Melvin, that proceedings for probation must be initiated by or on behalf of the convicted person before the time of pronouncing judgment, and must be acted upon by the trial court prior to or at the time of pronouncing such judgment; and that its jurisdiction to extend the merciful intent and provisions of section 1203 of the Penal Code to a defendant ceases at the time such judgment is pronounced. Section 1203 does not expressly so declare: The opening paragraph of said section empowers the trial court "of its own motion" and at any time after plea or verdict of guilty so long as it retains jurisdiction of the case, and whenever there are circumstances in mitigation of the punishment, either by the report of the probation officer or otherwise, which show that the ends of justice would be subserved thereby to place the defendant upon probation. The foregoing is the plain intent of this section of the Penal Code as expressed in its opening paragraph, and this intent should be given effect in harmony with the beneficent purpose for which the probation law was enacted, unless this intent and the time of its operation is limited either by the succeeding clauses of the section itself or by other and controlling provisions of the Penal Code. That it is not limited by the succeeding clauses of the section, but, on the contrary, is enlarged and expanded so as to be expressly and definitely extended to a period subsequent to the pronouncement of judgment, is made plain by what follows in the section itself, and by the history of its amendment so as to give expression to this enlarged intent. The second subdivision of the section begins with the statement that "the court, judge or justice thereof, may suspend the imposing, *or the execution* of sentence," etc.; and continues that "in case of such suspension of imposition *or execution of sentence,* the court shall place

such person on probation," etc.; and further provides that "where the maximum possible term of such sentence is less than two years, then such period of suspension of imposition *or execution of sentence* may, in the discretion of the court, continue for not over two years"; but that where the offense consists in a violation of certain other sections of the Penal Code, "such suspension of imposition *or execution of sentence* may, in the discretion of the court, continue for not over five years." The phrase in the above-quoted portion of this section, *"or execution of sentence,"* as the section read prior to its amendment in 1911, was limited to cases where the punishment was both fine and imprisonment, the reason being to give a defendant the opportunity, when occasion afforded, to work out his fine; but in the year 1911 the legislature broadened this provision of the section so as to give it application to every case wherein the discretion of the court to grant probation might be exercised. The obvious reason for this enlargment of the power of the trial court, after the pronouncement of judgment in every case, to suspend *"the execution of sentence,"* was to enable it to act in granting probation in every case whenever it appeared that "the ends of justice should be subserved thereby," so long as it retained jurisdiction over the case. The succeeding subdivisions of the section in question further disclose and illustrate this intent; subdivision 3 thereof, under the title "Rearrest," provides that the person admitted to probation may be brought before the court upon the charge of violating the terms or the spirit and purpose of such probation and the court may thereupon revoke and terminate such probation; and in such case the court may, "if the sentence has been suspended, pronounce judgment after the said suspension of the sentence for any time within the longest period for which the defendant might have been sentenced; but if the judgment has *been pronounced and the execution thereof has been suspended,* the court may revoke such suspension, whereupon the judgment shall be in full force and effect." Subdivision 4 of the section provides that "The court shall have power at *any* time during the term of probation to revoke or modify its order of suspension of imposition *or execution of sentence.* It may, at any time, when the ends of justice will be subserved thereby, and when the good conduct and reform of the person so held on probation shall warrant it, terminate the

period of probation and discharge the person so held.'' It would seem to be an irresistible conclusion to be drawn from the foregoing provisions of section 1203 of the Penal Code that it was the intent of the legislature in the phrasing of the section in its present form to empower trial courts to grant probation to convicted persons at any time before or after pronouncing judgment and to change its order made in that respect, *whenever the ends of justice would be subserved* by either making or modifying such orders so long as it had jurisdiction of the case. (*People* v. *Sizelove,* 158 Cal. 493, [111 Pac. 527].) It is insisted, however, that the time within which the trial court must act in the exercise of its original power to grant probation under the provisions of section 1203 of the Penal Code is limited by the terms of section 1191 of said code. This last-named section of the code has reference solely to the time within which judgment must be pronounced. As section 1191 read at the time of its original inclusion in the Penal Code in 1872 it provided in substance that after a plea or verdict of guilty the court should appoint a time for pronouncing judgment which should be at least two days after the verdict. With some slight amendment the section stood in the above substantial form until the year 1909. Prior to this latter date, however, and as early as 1903, the probation plan of dealing with offenders deserving its application, embodying the main features and provisions of the statute in its present form, was ingrafted upon section 1203 of the Penal Code. It is thus plain that section 1191 and section 1203 had originally no correlation as to their terms or as to the changes made or to be made in either section. Under these two sections of the Penal Code, as they stood between the years 1903 and 1909, the trial court could, under section 1191, take its own time in the matter of pronouncing judgment after the expiration of two days from the date of the verdict; and the trial court could also, under section 1203, deal with the subject of probation at its own time and even on its own motion, either before or after pronouncing judgment, so long as it had jurisdiction of the case. The argument that this view as to the powers of the trial court under the latter section would invest it with power to take offenders from the state prison at any time after the execution of their sentence had begun, and grant such persons probation, has no force for the reason that the jurisdiction of the trial court over the case ends when the

execution of its sentence begins; and a reasonable reading of section 1203 of the Penal Code gives to the trial court the power only to suspend the operation of its judgment before the defendant has been removed from its presence and custody in the course of its execution.

It being thus seen that the changes made in these two sections of the code had no original connection, the inquiry arises as to why section 1191 was changed to the form it took in the year 1909 and was later changed again to its present form. The reason for the change in section 1191 of the Penal Code in 1909 is not far to seek. It is a matter of well-remembered public history that this section was then amended for the sole purpose of *shortening* the time within which trial courts must pronounce their judgments on account of the delays in so doing which had in some instances become a public scandal. It was then for the first time provided that the trial court must pronounce its judgment within five days after a verdict or plea of guilty; or, in any event, within not more than twenty days beyond said time; and that this, the sole intent of said amendment of the section, might be more effective, section 1202 of the Penal Code was at the same time adopted, which provides that the defendant should be entitled to a new trial unless judgment was pronounced upon him in conformity with the requirements of time embraced in section 1191. That portion of the provisions of section 1191 which refers to the subject of probation and which provides for the slight extension in the time for pronouncing judgment where the question of probation is under consideration, was obviously included for the purpose of giving the trial court a brief period within which to determine a pending inquiry upon that subject, but was not designed or inserted with a view to affecting, and certainly not with a view to limiting, the already existing provisions of section 1203. To hold otherwise is to place the legislature of 1909 in the inconsistent position of expanding the merciful features of section 1203 by its amendment at that session in other respects and yet at the same time, and by indirection, contracting and limiting the time within which the trial court might act in the exercise of these expanded benefactions. Had the legislature intended to limit the power of the trial court in the matter of probation to a time not later than the moment of pronouncing its judgment, it would have said so; it would have stricken from section 1203 its repeated

phrases respecting the power of the court to suspend "the execution of the judgment," and also the power of the court to alter from time to time its orders made in that regard. The legislature not having done so, this court should not do so, since so to do would be to take a backward step in the direction of restricting the power of trial courts to extend the merciful provisions of the probation law to all cases where "the ends of justice shall be subserved thereby." It is true that in the year 1911 the legislature amended both of these sections of the Penal Code in certain particulars. The changes then made in section 1203 were along the line of a further expansion of its beneficent provisions. The amendment then made to section 1191 simply added the provision that extension in the time of pronouncing judgment should not exceed ninety days. My conclusion, therefore, is that the legislature did not intend to limit the full powers conferred upon trial courts by virtue of section 1203 by anything later inserted in section 1191 with obviously a different purpose in view. It is, however, insisted that there are certain other sections of the Penal Code which finally conclude this matter. These are sections 1263 and 1265, the former of which provides that "if a judgment against the defendant is affirmed, the original judgment must be enforced," and the latter of which provides for the transmission of the judgment of the appellate tribunal to the clerk of the trial court upon the affirmance of its judgment. Both of these latter sections of the Penal Code were inserted therein at the time of its adoption in 1872 and have remained unchanged ever since. It cannot, therefore, be claimed that either of them was intended to have application to conditions arising out of the operation of probation laws which were as yet unborn; and a simple illustration will serve to show the absurdity of such attempted application. Suppose that a defendant is convicted and a judgment pronounced confining him in state prison for a term of years, but the court, at the time of pronouncing such judgment, suspends its execution, as it is conceded under the strictest construction of sections 1191 and 1203 of the Penal Code in their present form, the trial court has power to do. Suppose the defendant nevertheless appeals from the judgment of conviction, and that within a time long before the term fixed for his probation has expired, the judgment of conviction is affirmed; what effect would section 1263 of the Penal Code have upon such a state

of facts? Obviously none. The order of suspension of the execution of the judgment is no part of the judgment; no more than an order staying execution in any case is a part of the judgment. Yet how could section 1263 of the Penal Code be given effect in the way of compelling the enforcement of a judgment which had been suspended as to its execution by a valid order of court under section 1203 of the Penal Code?

The sole question is as to when the power of the trial court ends in the matter of granting probation: Is it reasonable, is it in harmony with the pronounced advance during recent years in our more merciful methods of dealing with persons convicted of crime, to require such persons to immediately apply for probation before the ink is dry upon the verdict, no matter how unjust or how illegal they may deem that verdict to be; and to make such application before the court shall have pronounced its judgment, and hence before the defendant can have been made aware as to its terms or as to how severe its penalties are to be? If he shall not make this application under the strict ruling of Mr. Justice Melvin's opinion, before he takes his appeal, his chance for obtaining probation is gone forever. Such a ruling seems to me to be utterly inconsistent with the trend of modern thought and theory in the treatment of persons accused or convicted of crime. An appeal from a judgment does not operate to deprive the trial court of all jurisdiction over the case pending the appeal, but only over so much of it as is directly affected by the appeal. (*Bliss* v. *Superior Court*, 62 Cal. 543; *Durbrow* v. *Chesley*, 23 Cal. App. 627, [138 Pac. 917].) The trial court still has power to correct clerical errors; to supply lost records; to discharge receivers; or dispose of attached property and the like. (*Buckman* v. *Whitney*, 24 Cal. 267; *Fay* v. *Steubenrauch*, 141 Cal. 573, [75 Pac. 174]; *Pease* v. *Fink*, 3 Cal. App. 371, [85 Pac. 657]; *Baughman* v. *Superior Court*, 72 Cal. 572, [14 Pac. 207]; *Loveland* v. *Alford*, 76 Cal. 565, [18 Pac. 682]; *Broder* v. *Conklin*, 121 Cal. 289, [53 Pac. 797].) The trial court has also in criminal cases the power to grant a writ of probable cause after an appeal has been taken and even after a sentence has been partly executed. (Pen. Code, secs. 1243, 1244, 1245.) The effect of an order of probable cause by the trial court is to suspend the execution of a judgment pending an appeal. Why should not the trial court, which has jurisdiction to issue a writ of probable cause at any time pending an appeal, be

held to have been also given jurisdiction to place a defendant upon probation at any time subsequent to the taking of an appeal and prior to the execution of the judgment, whenever it shall be made to appear that the interests of justice will be subserved thereby?

There are numerous criminal cases wherein the persons are not criminals by nature and have not acted with criminal intent in the violation of a particular law, but have acted in good faith in so doing, believing the law to be unjust or unconstitutional or not to have application to their conduct in the doing of the act. Upon being convicted they may still in good faith retain this belief and take an appeal in full confidence that the law will be declared unjust, or unconstitutional, or inapplicable to their case by the court of last resort. Why in reason should such a person be compelled to seek probation, with its certain humiliating features under a judgment which he is honestly, though it may be mistakenly, appealing from as founded upon an unjust or illegal statute? Why should not such a person be permitted to go free and hold his head erect under his appeal bond while this appeal is pending; and why should not such a person, when the appellate tribunal has finally declared that his view of the injustice or illegality of the statute is a mistaken one, be permitted to apply for probation? And why should not the trial court in such a case, and at any time before the execution of the sentence has begun, have power on application of the defendant or on its own motion, to suspend the execution of such sentence in the interests of justice, in preference to sending to jail one who is not a criminal at heart or in intent, and whose further punishment or disgrace would be violative of the very essential ends and objects of the laws relating to probation? It is claimed by the petitioner that this is such a case, and whether or not this be true, the rule now to be laid down would apply to all such cases, and this appears to me to furnish the best possible reason why the rule asserted in the opinion of Mr. Justice Melvin should not receive the approval of this court.

Lorigan, J., concurred.