[Crim. No. 1486. Second Appellate District, Division One.— December 12, 1927.]

THE PEOPLE, Respondent, v. J. RUSSELL JONES, Appellant.

Leon R. Yankwich, McDonald & Thompson and Thomas C. Ridgway for Appellant.

U. S. Webb, Attorney-General, and Lionel B. Browne, Deputy Attorney-General, for Respondent.

SHAW, J., *pro tem.*—Appellant was tried on an information charging him with larceny and embezzlement of certain pipe belonging to Russell Oil Company, a common-law trust,

and after dismissal of the larceny count was found guilty of embezzlement.

The Russell Oil Company had an oil lease on certain land of one Carter, at Santa Fe Springs, California, hereinafter referred to as the Carter lease. On this lease were three oil wells equipped with casing and other appurtenances, all of which were owned by the said Russell Oil Company. The wells being out of production, Russell Oil Company, on September 8, 1925, made a contract with M. H. Murray, by which it granted to him the sole and exclusive right to operate these wells at his own expense, for doing which he was to have fifty per cent of the oil and gas produced, but no property interest in the equipment, and reserved the right to dispose of all equipment not actually being used by Murray. Claiming to act under this contract, appellant went into possession of the Carter lease in January, 1926, and attempted to operate the wells. During his operations some 4,500 feet of 6¼-inch casing was pulled from one of the wells, designated as No. 1, and was placed on racks. This work was done under the direction of Orville Pfeiffer, who was appellant's superintendent on the lease, and was completed about June 22, 1926. On June 25, 1926, 771 feet of this casing was sold by Pfeiffer to Commercial Supply House, a dealer in such commodities at Long Beach, for $501. In this transaction Pfeiffer used the fictitious name of C. E. Williams and, by indorsing that name on a check, got the money. He deposited $450 of this amount in the Bank of Norwalk, which is near the Carter lease, in an account which he then opened in his own name. In the latter part of August, 1926, Russell L. Williams, who was acting for Russell Oil Company, learned that some pipe had been taken away from the Carter lease, and early in September he demanded of appellant and of Pfeiffer that it be returned or the value of it paid. He also told appellant that he would take the matter up with the authorities. A few days later, on Monday, September 13th, all but a few feet of the pipe were returned to the Carter lease. This was done by the procurement of Pfeiffer, who gave to Commercial Supply House a forged order in the name of Marland Oil Company for delivery of the pipe to a well at Huntington Beach, then had it hauled

by a truck to an abandoned well at Downey, and from there hauled by another truck to the Carter lease.

This transaction is the basis of the charge against appellant. Pfeiffer, who was also under a like charge, was a witness for the prosecution. He admitted upon the stand his above-mentioned acts, gave the details of his conduct in the matter, and testified that it was all done at the direction and under the orders of appellant; that he gave appellant $50 of the money received from the pipe in cash, and that appellant received the benefit of the remainder of it either as a credit on account of his indebtedness to Pfeiffer or as payment of bills for work done on the lease which were settled by Pfeiffer.

Appellant's first contention is that if he was guilty of any offense it was larceny and not embezzlement. At the trial he made the contrary contention in moving for the dismissal of the larceny charge. However, that charge was dismissed on the motion of the district attorney, and there is no legal barrier to the assumption of such inconsistent positions by appellant. The theory of his argument here is that he was not entrusted by Russell Oil Company with the casing in question, but came wrongfully into its possession. The above-mentioned contract made by Russell Oil Company with Murray contained a clause that it should not be assignable without its consent. Appellant obtained assignments of this contract, but did not procure any express consent thereto by Russell Oil Company, and apparently made no effort so to do. However, he took possession of the lease and operated the wells, or at least attempted to put them into condition to operate, and expended money for that purpose, claiming the right to do this under the Murray contract and not otherwise. Russell L. Williams, who represented Russell Oil Company, testified that at the time the pipe was taken away they did not recognize the contract as a valid existing contract; that they never recognized appellant at any time, and that appellant was not the agent or servant of Russell Oil Company, but that "the whole property was entrusted to M. H. Murray and anyone he might employ or have there"; that Murray had a right to use the equipment in the operation of the property, and that neither Murray, nor appellant, nor Pfeiffer, had any authority to sell any property of

Russell Oil Company. It was shown that appellant's claim of right and his acts and expenditure of money on the lease were known to Russell Oil Company, and with such knowledge they suffered him to remain in possession of the lease and continue his operations thereon, without taking any steps to put him off until after the occurrences which gave rise to this case.

From these facts the jury might properly find that appellant was entrusted with the property of Russell Oil Company, including the casing in question. Under the circumstances, that company might well have been estopped from insisting upon that clause of the Murray contract which forbade assignments without their consent, or be held to have waived it. Such provisions are inserted in contracts for the benefit of the party whose consent is required, and, like all provisions of that kind, may be waived by such party. (Civ. Code, secs. 3268, 3513; 3 Cal. Jur. 240; 25 Cal. Jur. 929; *Schnittger* v. *Rose,* 139 Cal. 656, 661 [73 Pac. 449]; *Frank* v. *New Amsterdam C. Co.,* 175 Cal. 293 [165 Pac. 927].) The contract in question is analogous to a lease, an assignment of which in violation of a covenant against assignments without the lessor's consent is not void but carries the term. (15 Cal. Jur. 763; *Schnittger* v. *Rose, supra; Potts Drug Co.* v. *Benedict,* 156 Cal. 322, 327 [25 L. R. A. (N. S.) 609, 104 Pac. 432].) In such a case the lessor has a remedy by declaring and enforcing a forfeiture for the breach, but he may waive the forfeiture and allow the assignee to remain in possession, in which case the assignee holds under the lease and the assignment. The same rule must be applied to this contract. ■ This disposes of appellant's contention that the court erred in refusing to give the following instruction: "You are instructed that when a contract carries a clause forbidding assignment without written consent, an attempted assignment does not transfer any rights or liabilities unless it is accompanied by said written consent." This is obviously erroneous.

■ Moreover, appellant assumed and claimed to be acting in a capacity which would make him a bailee for Russell Oil Company of all their casing and other equipment on the Carter lease. Having so acted and obtained possession of the property on that assumption, and Russell

Oil Company having at least tacitly acquiesced in his conduct he is now estopped to deny, even in this criminal prosecution, that he was entrusted with the property in question by or for Russell Oil Company. (*Ex parte Hedley,* 31 Cal. 108; *People* v. *Treadwell,* 69 Cal. 226 [10 Pac. 502]; *People* v. *Gallagher,* 100 Cal. 466 [35 Pac. 80]; *People* v. *Leonard,* 106 Cal. 302 [39 Pac. 617]; *People* v. *McLean,* 135 Cal. 306 [67 Pac. 770]; *People* v. *Robertson,* 6 Cal. App. 514 [92 Pac. 498]; *People* v. *Steffner,* 67 Cal. App. 23 [227 Pac. 699].) Hence the court did not err in refusing certain instructions requested by appellant in which a contrary statement of the law was made, and for the same reasons instruction No. 18, of which appellant complains, was correct. It reads as follows: "The court instructs you that if any person assumes to act as the agent or bailee of another, and in such assumed capacity he is intrusted with, and receives into his care and custody, the property of another, for the use of such other person, and thereafter fraudulently and feloniously appropriates and converts such property or any part of the same to his own use, or to any use or purpose not in the due and lawful execution of his trust, he is guilty of embezzlement."

Pfeiffer's testimony, taken with the other facts above stated, was sufficient to show appellant's guilt of the crime of which he was convicted. It is obvious, however, that Pfeiffer, according to his own testimony, was an accomplice of appellant, and the prosecution stipulated at the trial that this was the fact. The question, therefore, arises whether there was sufficient corroboration of Pfeiffer's testimony, and appellant forcibly contends that there was not.

Section 1111 of the Penal Code provides as follows, regarding the corroboration of accomplices:

"A conviction cannot be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof."

The construction which has been placed on this provision is succinctly stated as follows in 8 Cal. Jur. 178–180:

"Evidence to corroborate an accomplice need not be sufficient to establish the guilt of the defendant, and it need not establish the actual commission of the offense. Nor need it extend to every fact and detail covered by the statements of the accomplice, or to all the elements of the offense, or prove that the accomplice has told the truth. However, the corroborative evidence must tend in some slight degree, at least, to implicate the defendant. While it need not be strong, more is required by way of corroboration than to raise a mere suspicion. It is sufficient if the corroborating evidence tends to connect the defendant with the commission of the offense, though if it stood alone it would be entitled to little weight.

"It is not necessary to corroborate the testimony of an accomplice by direct evidence. If the connection of the accused with the alleged crime may be inferred from the corroborative evidence in the case, it is sufficient. While the testimony of one accomplice cannot be corroborated by that of another accomplice in the crime charged, the necessary corroboration may be furnished by the defendant's own testimony, or by admissions or confessions made by him. But under the express provision of the code mere evidence of the *corpus delicti* is not sufficient corroboration."

In *People* v. *Hendricks*, 71 Cal. App. 730 [236 Pac. 214], the court, after referring to section 1111, said:

"If the defendant told the officers that he knew nothing about the stolen articles, then his statement was false, because he testified that he saw the sun visor in the garage on the 12th of August. If he refused to make any reply when he was asked about the incriminating evidence against him, then his silence was in the nature of an admission of guilt. 'Misrepresentations, contradictions, or silence of defendant when accusing statements are made usually will have the same effect as a confession or admission as corroborative of the accomplice.' (16 C. J. 707; *Holt* v. *State*, 28 Ga. App. 758 [113 S. E. 49]; *Ettinger* v. *Commonwealth*, 98 Pa. 338.)"

A similar holding was made in *People* v. *Kelly*, 69 Cal. App. 558 [231 Pac. 767], where many of the authorities

are reviewed, and in *People* v. *Taylor*, 70 Cal. App. 239 [232 Pac. 998].

Under the rules established by the foregoing authorities, we think the corroborating evidence must be held sufficient. A detailed statement of it here would unduly prolong this opinion. There was testimony given by others than Pfeiffer, from which the jury might have found participation by appellant in the proceeds of the sale of the casing, his desire to raise money by sale thereof, false statements by him as to his knowledge of the pipe having been taken away, silence when accusatory statements were made to him, apparent knowledge of facts for which no other explanation appeared than his participation in the crime, apparent foreknowledge of the time when the casing would return, testimony by him falsely denying various incriminating facts, and inconsistent statements regarding the matter.

Appellant also requested the following instruction, which was refused: "The testimony of an accomplice should be viewed with distrust and acted upon with great caution and is never of itself sufficient in law to establish a crime. If the evidence introduced for the purpose of corroborating an accomplice merely raises a suspicion of the guilt of the defendant, this is not sufficient to constitute corroboration and in such event it is the duty of the jury to find the defendant not guilty."

The statement that the testimony of an accomplice should be viewed with distrust and acted upon with great caution is a charge upon a matter of fact and was properly refused. It goes beyond the instruction provided for in subdivision 4 of section 2061 of the Code of Civil Procedure, and the rule is now well established that even that instruction is an instruction on a matter of fact and should not be given, the code provision referred to being in violation of article VI, section 19, of the constitution. (*Hirshfeld* v. *Dana*, 193 Cal. 142, 160 [223 Pac. 451]; *People* v. *Blanchard*, 71 Cal. App. 402 [235 Pac. 467]; *People* v. *Hendricks*, 71 Cal. App. 730, 734 [236 Pac. 214].) The second sentence of the requested instruction appears to be correct; but a case will not be reversed for the refusal of an instruction unless it was the duty of the trial court to give the instruction exactly as requested. (*People* v. *Davis*,

64 Cal. 440 [1 Pac. 889]; *People* v. *Brown*, 62 Cal. App. 96, 104 [216 Pac. 411].)

Appellant makes some other points as to instructions given and refused, but after careful consideration we find no merit in them, and do not regard them as of sufficient importance to justify a detailed discussion here.

■ Another point made by appellant is that the court erred in refusing to allow him to testify as to the amount of money he had on deposit in a certain bank at El Segundo on the date when the casing was sold. There are authorities holding both ways as to the admissibility of such testimony, but the question need not now be determined. Authorities cited in favor of its admission declare that it is proper because relevant to the question of fraudulent intent. Conceding for the purpose of this discussion that the evidence was admissible for this reason, we think its rejection was not prejudicial under the circumstances. The accomplice, Pfeiffer, had testified to a state of facts which, if true, left no doubt as to appellant's fraudulent intent. Appellant's contrary showing, as made by his testimony, was that he did not take the property and had no connection with its taking by Pfeiffer. If the jury had believed this testimony, they must have acquitted him; but if they believed that of Pfeiffer—and their verdict shows that they did—no amount of evidence as to defendant's means or resources could have raised any doubt as to his fraudulent intent in taking the property. Moreover, appellant testified without objection that at the time the casing was sold he had sufficient money to pay all bills upon the lease on deposit in his bank accounts at El Segundo and San Diego; that about the time the shortage was discovered he had plenty of money in his account; that during his operations on the lease he had plenty of money or could get it to pay the men; and that between June 26th and July 12th he had $3,000 in his account and spent $1,650 for expenses. It does not appear that he could have made any better showing had he been allowed to answer the question under consideration.

■ Another point made is that the court erred in admitting evidence of the dishonor of three checks which appellant gave Pfeiffer on a bank in Texas. Evidence was offered by the prosecution and received showing that on the day

after the sale of the casing appellant filled out three checks, aggregating about $68, on the account in which Pfeiffer had deposited the proceeds of the sale, and at appellant's request Pfeiffer signed them. These checks were drawn in favor of workmen upon the lease, and were delivered to them in payment of wages due them from appellant. To negative the inference that he had knowingly received a part of the proceeds of the embezzlement, which might be drawn from this evidence, appellant testified that he had previously paid out $92 in behalf of Pfeiffer to release the latter's automobile from attachment, and that the above-mentioned checks for $68 were in partial satisfaction of this advance. Thereupon, the prosecution was allowed to prove that shortly before this $92 payment, and before the sale of the casing, appellant had given Pfeiffer three checks on a bank in Texas for the aggregate amount of $605, which were deposited by Pfeiffer in an account he had in the Norwalk bank, but not the same account in which the proceeds of the sale of the casing were later deposited; that Pfeiffer then gave appellant a check for $150 on this account, on which appellant got the cash, and that these Texas checks later came back dishonored. Pfeiffer testified that appellant gave him a check to cover these checks, and his statement could be construed to refer to this $92 payment. We see no error in this ruling. It was proper for the prosecution to show that appellant received part of the proceeds of the embezzlement, as tending to connect him with the commission of the offense; and in response to his testimony that the $68 checks produced by the prosecution for that purpose were a payment on indebtedness of Pfeiffer to appellant, it was competent for the prosecution to show that in fact the indebtedness was the other way, and such was the tendency of the evidence complained of.

Appellant's final point is that the court erred in refusing him leave to apply for probation, his claim being that such leave was refused for the sole reason that he had pleaded not guilty and had been convicted by a jury, instead of pleading guilty. The record sustains his claim as to the reason for which his request was refused. After a motion for a new trial had been argued, and the court had indicated its intention to deny it, appellant's counsel said, ''I would like permission to present an application

for probation to the court, and present this man's past life for some thirty years; . . . I feel that I can make a very satisfactory showing to your Honor as to what sort of life this man has led prior to this time." Thereupon the court denied the motion for a new trial, and appellant's counsel further said, "I request permission of the Court to present officially to the Court through its regular probation officer the facts and circumstances which I believe will warrant the Court in granting leniency to this man," to which the court replied, "Well, the court will not allow you to do that, Mr. Thompson. I feel that he has had a fair and impartial trial. He has submitted the issues in this case to a jury of his own selection, and he will have to abide by the judgment of that jury from the facts in the case. When a defendant walks into my court and pleads guilty and submits the facts to me, why, then it is time to determine whether he shall have probation or have punishment in prison, but in a case of this kind I feel, the jury having given its judgment, that the court should not take any time to review those facts or to investigate further, or to take into consideration anything at all in the matter. I believe that that should not be done." To this appellant's counsel said, "I am only making this request, not with the idea of your Honor reviewing the facts before you now, but assuming that the verdict of the jury is correct," and after further discussion between him and the court, he said, "However, your Honor must bear in mind that the probation law is for the guilty." To this the court replied, "Yes, primarily it is for those who admit their guilt; not, in my judgment, for those who say they are not guilty. I think the whole theory of the probation law is to grant its benefit to those who admit their guilt and who offer mitigating circumstances, and not for those who still say 'I am innocent.' I think for the man who is innocent, after a conviction and judgment of the court, his appeal is to be made to the Governor and not to the judge under the probation law. I think it would rather tend to stultify the system. I think it is too dangerous a proposition and would involve the courts in too much labor, to give a man two trials. For these reasons that I have adverted to I will not permit an application for probation to be filed."

A reading of the probation law (Pen. Code, sec. 1203) at once discloses that it does not support the view thus announced by the trial court as to its scope. The opening provision of section 1203 is, omitting words immaterial here: "After the conviction by plea or verdict of guilty of a public offense . . . the court . . . before judgment and sentence . . . may upon oral suggestion of either party or of its own motion when it appears that there are circumstances which may properly be taken into view either in aggravation or mitigation of the punishment, in its discretion refer the same to the probation officer directing said probation officer to investigate and to report, recommending either for or against release upon probation at a specified time, and the court shall hear the same summarily at that specified time and upon such notice to the adverse party as it may direct." This section further provides in subdivision (e) that when a defendant has fulfilled the conditions of his probation or has been discharged from probation "if he has been convicted after a plea of not guilty, the court shall set aside the verdict of guilty." Words could scarcely be used which would express more clearly the intention of the legislature to extend the benefits of the probation law to defendants who deny their guilt and upon trial are convicted. In the exercise of its discretion the court passing on applications for probation is expected to select only the deserving cases for the bestowal of clemency, but this cannot be done if the court arbitrarily refuses to hear or consider their applications. In the present case, the court entirely departed from the letter and the spirit of the probation law in refusing to entertain appellant's application merely because he had not pleaded guilty.

Is the court's error in this respect reviewable on appeal? Appellant has given notice of an appeal from the order denying his motion for permission to file an application for probation. This order was made before judgment and is not an appealable order. (Pen. Code, sec. 1237.) The attempted appeal from it must therefore be dismissed. But section 1259 of the Penal Code provides: "Upon an appeal taken by the defendant in open court, the appellate court may, without exception having been taken in the trial court, review any question of law involved in any ruling, order, instruction, or thing whatsoever said or done at the trial

or prior to or after judgment, which thing was said or done after objection made in and considered by the lower court, and which affected the substantial rights of the defendant. The appellate court may also review any instruction given, refused or modified, even though no objection was made thereto in the lower court, if the substantial rights of the defendant were affected thereby.''

Under this provision, five conditions must be complied with in order that the appellate court may review a ruling of the trial court: (1) An appeal taken in open court; (2) a question of law involved in the ruling; (3) a ruling at the trial or prior to or after judgment (not including orders which are directly appealable); (4) objection made in and considered by the lower court before the ruling (except in case of an instruction); (5) a ruling or order which affected the substantial rights of the defendant. In this case, the record clearly shows that conditions 1, 3 and 4 have been met.

We think there is also a question of law involved, under the circumstances of this case. It is true section 1203 provides that the court may ''in its discretion'' refer the matter to the probation officer for a report and thereafter ''in its discretion'' place the defendant on probation; and no doubt in the ordinary case the exercise of this discretion would not be reviewed on appeal. But we are satisfied that the same general rule applies to the discretion conferred by this section as to the numerous other cases of discretionary power conferred upon the courts, concerning which the supreme court said in an early case: ''The discretion intended, however, is not a capricious or arbitrary discretion, but an impartial discretion, guided and controlled ·in its exercise by fixed legal principles. It is not a mental discretion, to be exercised *ex gratia,* but a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice.'' (*Bailey* v. *Taafe,* 29 Cal. 422, 424.) Citations might be multiplied almost without number showing that the rule stated in *Bailey* v. *Taaffe* has been followed and applied to the discretion conferred upon the court in a great variety of cases. With an exception to be noticed presently, we think this rule is applicable to the discretion exercised by the court in passing on an application for

probation. Suppose the court should in response to a defendant's application for probation say to him, "I do not like the color of your hair,—or, you are of the black race, —and for that reason I will not hear your application." Would the defendant be obliged to submit to such conduct without remedy? Such a ruling would clearly be an abuse of discretion because not guided or controlled by principles established by law therefor, but made with reference to some criterion not provided for or countenanced by law. The same is true of the ruling here complained of. It is based on a ground flatly contrary to the provisions of the code. Such action cannot be regarded as other than an abuse of discretion, under any accepted definition of that term. When such an abuse of discretion occurs a question of law is presented. In order to review the action of the trial court here this court needs but to answer the question, "Was the order based on any ground which the law sanctions?" and the answer being "No," a reversal of that action is not an interference with any discretion vested by law in the trial court.

Herein the case differs from the ordinary one where the court has considered a defendant's application for probation on its merits and either refused to entertain the application or refused to grant it when heard; and this brings us to the point above referred to in which we think the rule declared in *Bailey* v. *Taaffe* is not fully applicable to the discretion of the court in probation matters. When the court gives consideration to the merits of the application and from them determines that probation ought not to be granted—which it may do either at the preliminary stage where defendant suggests that there are matters in mitigation of punishment and requests a reference to the probation officer, i. e., in the language customarily used but not found in the code, asks permission to file an application for probation, or later at a summary hearing on the probation officer's report—the discretion of the court is not and cannot be controlled by any fixed legal rules. It must be guided by considerations pertaining to psychology, sociology and penology, or, in the words of the code, to "the ends of justice"; by general rules of policy which have not been and in the nature of the case should not be crystallized into positive or definite rules of law. Since

action based on a consideration of such matters does not involve any question of law, to this extent the rule of *Bailey* v. *Taaffe* cannot be applied to the discretion vested in the court in probation matters, and its exercise of that discretion cannot be reviewed on appeal. If the record is silent as to the grounds of the ruling, the presumption would be, under the general rule as to presumptions on appeal, that it was founded upon a consideration of the merits of defendant's application; but here there is an affirmative showing to the contrary. When the court undertakes to deal with the question whether a particular case or a particular defendant is within the scope of the probation law, then it is dealing with fixed legal principles, and a departure from those principles is an abuse of discretion and raises a question of law which may be reviewed on appeal.

There remains for consideration the question whether the order complained of affected the substantial rights of the appellant. We have no doubt that it did. Had the court considered his application on its merits, it might, of course, have found that he was not a proper subject for the benefits of the probation law and, as we have just said, we could not review such a finding, whether expressly appearing or presumed from the silence of the record; but the court might also conceivably have found to the contrary and have determined to place him on probation. On reaching the latter conclusion, it might have suspended either the imposing or the execution of the sentence; and in either case, on appellant's complying with the terms of his probation for the entire period thereof, the court must have set aside the verdict of guilty and dismissed the information and appellant would have been thereafter released from all penalties and disabilities resulting from the offense. (Pen. Code, sec. 1203, subds. [a] and [e].) A ruling which deprives a party of the opportunity to apply for and perchance to obtain such benefits unquestionably affects his substantial rights.

For the reasons stated, we think the order complained of may be reviewed on appeal from the judgment. We are not unmindful of the fact that in *People* v. *Dunlop*, 27 Cal. App. 460, 470 [150 Pac. 389], and *People* v. *Laborwits*, 74 Cal. App. 401 [240 Pac. 802], a contrary rule was declared. Apparently neither of those cases presented such a situation

as we have before us. In the Dunlop case the court said: "The action of the court in refusing to entertain an application by the defendant for probation after his conviction or of taking testimony or the report of the probation officer of the court with a view to admitting the accused to probation cannot be reviewed. The matter of admitting a person convicted of crime to probation rests entirely in the discretion of the trial court, as does likewise the question whether any proceeding shall be entertained by the court to that end. (Pen. Code, sec. 1203.) Indeed, as we understand said section, the only question which may arise thereunder can never be as to the action of the court in refusing to admit a convicted person to probation, but must always be, if any reviewable question may arise thereunder at all, whether the court abused its discretion in granting probation." The case seems to have been one where the action of the lower court was based on a consideration of the merits of the defendant's proposed application. In such a case we agree to the doctrine that the discretion of the court cannot be reviewed on appeal; but for the reasons already stated we think the reason given for the decision is too broad and should be so limited as not to apply to a case like that now before us. Such a case the court manifestly did not have in mind when writing the opinion in the Dunlop case. In the Laborwits case, which was decided by this court on the authority of the Dunlop case, no brief was filed, there was no reporter's transcript in the record, and the record disclosed nothing as to the reason for the action of the trial court. Under such circumstances, manifestly its action could not be reviewed on appeal, but we think the doctrine of the case should be limited as already stated.

▮▮▮ Our conclusion on this point necessitates a reversal of the judgment, by reason of the fact that an application for probation can be considered only before judgment. (*Beggs* v. *Superior Court,* 179 Cal. 130 [175 Pac. 642].) However, as we find no error affecting the verdict of conviction, no new trial is necessary, but the case may be simply remanded for further proceedings on the conviction. The situation is similar to that existing in *People* v. *Johnson,* 71 Cal. 384, 388 [12 Pac. 261], *People* v. *Mendosa,* 178 Cal. 509 [173 Pac. 998], and *People* v. *Gonzales,* 36 Cal. App.

782 [173 Pac. 407], where orders of that character were made.

The appeal from the order denying defendant's motion for permission to file an application for probation is dismissed, the order denying a new trial is affirmed, and the judgment is reversed, with directions to the trial court to arraign the defendant again for judgment and thereupon to hear and determine on its merits the defendant's motion for permission to file an application for probation and thereafter to proceed with the matter of judgment in such manner as may be in accordance with law and in conformity to its decision on the matter of probation.

Conrey, P. J., and Houser, J., concurred.

A petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 9, 1928.

Waste, C. J., and Langdon, J., dissented.