[L. A. No. 11802. In Bank.—December 31, 1929.]

CHARLES E. LLOYD, Petitioner, v. SUPERIOR COURT OF LOS ANGELES COUNTY et al., Respondents.

Jackson Hayes for Petitioner.

T. C. Becker for Respondents.

RICHARDS, J.—The petitioner applies for a peremptory writ of mandate to be directed to the Superior Court, in and for the County of Los Angeles, and the judge thereof, commanding said court to entertain, hear and determine the application of petitioner for probation, under the provisions of section 1203 of the Penal Code. The facts underlying petitioner's application, and which are undenied, may be briefly stated as follows: The petitioner, after his indictment by a grand jury for the offense of involuntary manslaughter, was brought to trial thereon, and on or about April 25, 1928, was found by the jury to be guilty of said charge. Thereafter, and on April 27, 1928, after his motion for a new trial had been denied, the petitioner was by the judgment of said Superior Court sentenced to a term in the state prison at San Quentin for the period prescribed by law for the crime of manslaughter; whereupon the petitioner on said twenty-seventh day of April, 1928, appealed to the District Court of Appeal in and for the Second Appellate District, Division Two, which appellate tribunal, after due hearing and consideration of said appeal, and on or about April 20, 1929, made and entered its decision affirming the judgment of the trial court, and thereafter and in due course the *remittitur* in said cause was filed with the clerk of said Superior Court. (*People* v. *Lloyd*, 97 Cal. App. 664 [275 Pac. 1010].) Upon taking his said appeal petitioner had been granted a writ of probable cause pending said appeal and the decision thereon, and as the result thereof had remained in the county jail

of the county of Los Angeles pending his said appeal and up to and including May 21, 1929. On said twenty-first day of May, 1929, and after the judgment of said court had become final by its affirmance upon appeal but before any further order of said court had been made looking to the execution of said judgment, the petitioner applied to said Superior Court and to William T. Aggeler, the judge thereof, for an order granting him probation, which application came on for hearing on or about May 24, 1929, whereupon the said court and the judge thereof denied the same, upon the express ground that the said court and the judge thereof had no authority to entertain said application or to grant probation thereon after appeal by said defendant from its foregoing judgment and sentence and after the affirmance thereof by the appellate tribunal upon such appeal. In so deciding and in so refusing to grant probation to the petitioner upon his said application the Superior Court rested its decision to that effect upon the majority opinion of this court in the case of *Beggs* v. *Superior Court*, 179 Cal. 130 [175 Pac. 642]. In so doing, however, the trial court and the judge thereof did not apparently take cognizance of the fact that section 1203 of the Penal Code of California, which had been construed by this court in the course of its foregoing opinion, had been thereafter several times amended by successive acts of the legislature, and it is the contention of the petitioner that the effect of these several amendments of said section of the Penal Code has been such as to render the decision of this court in the case of *Beggs* v. *Superior Court, supra,* no longer applicable to applications for probation when the same are made after appeal and affirmance of the judgment and sentence of the trial court, and that as a result thereof persons who have been convicted of offenses to which the beneficent and merciful provisions of section 1203 of the Penal Code are applicable may now, under the provisions of said section as thus amended, make application for probation after the affirmance of the judgment and sentence of the trial court upon appeal and at any time prior to the execution of said judgment and sentence, and that in the state of the section as thus amended it has become the duty of the trial court to entertain, hear and determine such applications for probation; and the petitioner for that reason has presented

this application for a writ of mandate to compel such action on the part of the trial court.

Section 1203 of the Penal Code as it existed at the time of the decision of this court in the Beggs case read, as to the portion thereof affected by said decision, as follows:

"After plea or verdict of guilty, where discretion is conferred upon the court as to the extent of the punishment, the court, upon oral suggestions of either party, or of its own motion, that there are circumstances which may properly be taken into view, either in aggravation or mitigation, of the punishment, may in its discretion, refer the same to the probation officer, directing said probation officer to investigate, and to report, recommending either for or against release upon probation, at a specified time, and the court shall hear the same summarily at such specified time, and upon such notice to the adverse party as it may direct. At such specified time, if it shall appear from the report furnished by the probation officer, or otherwise, and from the circumstances, of any person over the age of eighteen years so having pleaded guilty, or having been convicted of crime, that there are circumstances in mitigation of the punishment, or that the ends of justice shall be subserved thereby, the court shall have power, in its discretion to place the defendant upon probation."

The decision of this court in the Beggs case with relation to the application of the foregoing provision of the Penal Code was a divided opinion, two of the members of this court as then constituted dissenting from the reasoning and conclusion of the main opinion. In the main opinion, while it was apparently conceded that the limitation upon the time within which a convicted defendant would be entitled to apply for probation under the terms of said section arose by implication, it was held that the provisions of said section relating thereto were limited by the terms of sections 1191, 1263 and 1265 of the Penal Code to the brief period between the conviction of the defendant and the time provided by section 1191 for pronouncing judgment and sentence. In the dissenting opinion, however, it was reasoned that, treated both historically and logically, section 1191 of the Penal Code bore no such co-relation to section 1203 thereof as would have the effect of placing a limitation upon the power of the trial court to deal with the

subject of probation under the latter section either before or after pronouncing judgment so long as it had jurisdiction of the case. ■■ A careful re-reading of section 1191 of the Penal Code as the same was originally enacted in 1872 and as the same was later and finally amended in 1911 (Stats. 1911, p. 688), convinces us that the references therein as thus amended to section 1203 of the Penal Code, and to the limitation of time therein provided for the investigation of the question of probation on the part of the trial court, have reference to the period after application for probation has been made, and not to the period within which, after conviction, such application must be made. As to sections 1263 and 1265 of the Penal Code, and which remain in the form of their original adoption in 1872, we have become satisfied that neither of these sections, when historically considered, can be given the application accorded to them in the main opinion of this court in the Beggs case, but that the better reasoning and conclusions upon this branch of the case are to be found in the dissenting opinion therein. We are enforced in this conclusion by the review of the later trend of legislation and decision touching the subject of probation as the same appears in the statutes and decisions of those other jurisdictions, state and federal, to which we shall presently refer. ■■ Before doing so, however, we deem it necessary to first consider the several changes which have been made in the framing of section 1203 of the Penal Code by our state legislature since the decision, in the year 1918, of *Beggs* v. *Superior Court, supra.* Section 1203 has been four times amended since the date of that decision. The first two changes therein occurring, respectively, in 1919 (Stats. 1919, p. 1244), and in 1921 (Stats. 1921, p. 1296), had no bearing upon those portions of said section which are here involved in the instant proceeding. In 1923, however (Stats. 1923, p. 291), the legislature made an important change in the reading of that portion of section 1203 which is above quoted, and which amendment consisted in the insertion of the words "before judgment and sentence" in that portion of the section, which was thus made to read as follows: "The court or board or commission or other authority *before judgment and sentence* and except as hereinafter provided may," etc. By this amendment to the section it

would seem to be sufficiently plain that the legislature intended to make express that which had theretofore rested in implication with relation to the time after conviction within which applications for probation must be presented. In the absence of any enlightenment from the journals of that session of the legislature it may be fairly surmised that its purpose in making said amendment was to set at rest whatever controversies had arisen over the divided views of this court as expressed in the Beggs decision and dissent, by adopting expressly the words and meaning assigned to said section by the prevailing opinion in that case, and to thus fix upon said section the express requirement that applications for probation must be made "before judgment and sentence" in each particular case. Having thus expressly read into said section the language and intent of the main opinion in the Beggs case, the section of the code thus continued to read and to so expressly intend for the succeeding four years, when it was again amended by the legislature in 1927 (Stats. 1927, p. 1493) in several important respects, the chief of which, however, consisted in striking out of said section the words "before judgment and sentence" which had been inserted by the previous amendment. In determining what the state legislature really intended by striking out of section 1203 the words "before judgment and sentence" which had been inserted therein by the amendment of 1923 we are aided, we think, by the positive and uniform trend of legislation and decision which has taken place in other jurisdictions, state and federal, during the past ten years, and with which we may fairly assume the state legislature to have been also familiar in making such further amendment of section 1203 of the Penal Code as occurred in 1927, and to which we shall now refer. It is a significant fact that the Criminal Code of the state of New York, from which the Penal Code of California was in its original form almost bodily taken, contained certain sections relating to the procedure of trial courts after conviction, and which embodied in identical language the provisions of sections 1191, 1263 and 1265 of the Penal Code of California as originally enacted. Subsequently to the adoption of its Criminal Code the legislature of the state of New York incorporated therein those provisions thereof bearing upon the subject of probation and

which are to be found in identical or similar forms of expression in the legislation of many other states and, among those, of California, and to be embodied in the latter state in section 1203 of the Penal Code as originally adopted and in which, as in the New York statute, there was no express limitation as to the time prior to the execution of judgment and sentence within which applications for probation might be made. In the case of *People* v. *Ottaway*, 247 N. Y. 493 [161 N. E. 157], decided in 1925, the precise question as to the co-relation of the several earlier enacted sections of the New York Criminal Code and which are identical in form with sections 1191, 1263 and 1265 of our own Penal Code, as these sections originally read, upon the provisions of the later enacted probation law of New York, arose and was considered, and it was therein held that no such co-relation existed as would prevent a defendant from making his application for probation at any time before the execution of the judgment and sentence, and this without regard to whether he had or had not prosecuted a vain appeal. In the case of *State ex rel. Bottomly* v. *District Court, etc.*, 73 Mont. 541 [237 Pac. 525], also decided in 1925, the Supreme Court of Montana, in construing certain sections of the Penal Code of that state, which in their adoption had been based upon like provisions of the Penal Code of California, including section 1203 thereof, held, in a case in its main aspects identical with the instant proceeding, that the trial court had jurisdiction under the terms of the probation law of that state to suspend the execution of a jail sentence and place the accused upon probation after the dismissal of his appeal. In so deciding said court differentiated between the case before it and the Beggs case, but in so doing referred to the "vigorous dissenting opinion" in the latter case, and then proceeded to hold that since in the probation statute of Montana there was no express limitation upon the power of the trial court to entertain an application for probation at any time prior to the execution of the sentence it must be held to possess such power in conformity with the liberal interpretation which should be adopted with reference to remedial legislation of this character. In the case of *State ex rel. Gentry* v. *Montgomery*, 317 Mo. 811 [297 S. W. 30, 31], decided in 1927, it was held by the Supreme Court of Missouri in construing a pro-

bation statute, similar in its main aspects to the provisions of section 1203 of our Penal Code, that, in the absence of an express limitation upon the power of the trial court to grant probation to a particular defendant after the affirmance of his appeal, it possessed such power so long as it retained jurisdiction of the cause. The cases which have arisen in federal jurisdictions following the adoption of the act of Congress known as the Probation Act of March 4, 1925 (18 U. S. C. A., secs. 724–727), the provisions of which act are in the main similar to the provisions of section 1203 of our Penal Code as it read prior to its two latter amendments, and as it now reads, have followed the same trend of liberal interpretation to the extent of uniformly holding that in the absence of an express limitation upon the power of the trial court to hear and determine applications for probation at any time prior to the execution of sentence the trial court possessed that power. (*Nix* v. *James*, 7 Fed. (2d) 591; *Kriebel* v. *United States*, 10 Fed. (2d) 762; *Evans* v. *District Judge*, 12 Fed. (2d) 64; *Ackerson* v. *United States*, 15 Fed. (2d) 268; *United States* v. *Gargano*, 25 Fed. (2d) 723.) The question thus uniformly decided by the several Circuit Courts of Appeal before referred to finally made its way to the Supreme Court of the United States, wherein, and in the case of *United States* v. *Murray*, 275 U. S. 347, 357 [72 L. Ed. 309, 48 Sup. Ct. Rep. 146, 149], decided January 3, 1928, the opinion being delivered by Chief Justice Taft, it was held that the Federal Probation Act (18 U. S. C. A., secs. 724–727), gives power to trial courts to grant probation to a convicted defendant by suspending the imposition or by suspending the execution of the sentence at any time prior to the execution thereof so long as the trial court retained jurisdiction over the cause. It thus sufficiently appears that the uniform trend both of legislation and of judicial decision, state and federal, during the ten years which have intervened since the decision of the Beggs case has been steadfastly in the direction of upholding the power of trial courts to grant applications of offenders for probation at any time prior to the actual execution of the judgment or sentence, in the absence of an express limitation upon the exercise of such power contained in the terms of the probation laws. The amendment which the legislature of this

state adopted in 1927 (Stats. 1927, p. 1493), was in entire harmony with the then prevailing trend of both legislation and decision, insisting upon a liberal application to offenders of the merciful provisions of probation laws. The language of Chief Justice Taft in interpreting, in the case above cited, the section in the federal statute (18 U. S. C. A., sec. 724), wherein it was declared that the trial courts "shall have power after conviction or after a plea of guilty . . . to suspend the imposition *or execution* of sentence and to place the defendant upon probation" becomes very significant when it is noted that in section 1203 of our Penal Code, as amended in 1927 (Stats. 1927, p. 1493), the foregoing sentence in almost its identical form is to be found at the beginning of subdivision one thereof, wherein it is declared that "the court, judge or justice thereof, in the order granting probation may suspend the imposing *or the execution* of the sentence, and may direct that such suspension may continue for such period of time, not exceeding the maximum possible term of such sentence . . . upon such terms and conditions as it shall determine." In commenting upon this identical language Chief Justice Taft said: "The words mean to suspend the imposition of sentence or to suspend the execution of sentence, and that the placing of defendant upon probation is to follow the suspension of the imposition or the suspension of the execution of sentence, without an interval of any part of the execution. That is a reasonable construction and serves the well understood purpose of the statute. The suspension of execution was the point in time to which the provision for probation was directed."

From the foregoing considerations we are of the opinion that it was the intention of the legislature by its last amendment of section 1203 of the Penal Code, adopted in 1927 (Stats. 1927, p. 1493), expressly removing the limitation of time imposed by the express terms of its earlier amendment, to invest trial courts with the power under said amended section to hear and determine applications for probation at any time prior to the execution of sentence, and that without reference to whether the defendant had in the meantime undertaken to prosecute a vain and unsuccessful appeal.

■ It may be said in conclusion, and without detailed discussion, that we are of the opinion, based upon the previous action of this court in similar proceedings, that the application for a writ of mandate is a proper form of remedy, regardless of the fact that an appeal might lie from the order of the trial court either granting or refusing probation, since we are of the view that an appeal in cases of this character would not furnish to either the people or the defendant a plain, speedy and adequate remedy.

Let the writ issue as prayed for.

Langdon, J., Preston, J., and Waste, C. J., concurred.

SHENK, J., Concurring.—I concur in the judgment ordering the peremptory writ, but I cannot agree with the reasoning of the opinion that it was the intention of the legislature by the amendment of section 1203 of the Penal Code in 1927 (Stats. 1927, p. 1493), merely by omitting the words "before judgment and sentence," to vest power in the Superior Court to grant probation at any time, even after the affirmance of the judgment on appeal. When the phrase "before judgment and sentence" was stricken from the section in 1927 the language of the section in its immediate context was restored to the same condition obtaining when the Beggs case was decided. It must be presumed, therefore, that in adopting the language of the section in force when the Beggs case was decided the legislature intended to adopt the same with the construction placed thereon by the majority of this court in that case. "The familiar rule is that when there is a re-enactment of a statute in the same language, after a construction by the courts, the new statute is presumed to be intended to have the same effect as that previously given to its predecessors." (*Lightner Min. Co.* v. *Lane,* 161 Cal. 689, 700 [Ann. Cas. 1913C, 1093, 120 Pac. 771, 776] ; *Harris* v. *Barlow,* 180 Cal. 142 [179 Pac. 682] ; *Dalton* v. *Lelande,* 22 Cal. App. 481 [135 Pac. 54] ; 23 Cal. Jur., pp. 783, 795, 796.)

The effect of the majority opinion is to emphasize and reiterate the doctrine of the dissenting opinion and overrule by indirection the majority opinion in the Beggs case. But I find it unnecessary to overrule that case, either by indirection or otherwise, for I find other changes in section

1203 as redrafted in 1927 to indicate an intention to broaden the powers of the trial court in matters of probation, so as to accomplish the obviously beneficial result so greatly stressed in the opinion of Mr. Justice Richards. By the amendment in 1927 it was first declared in effect that the trial court should have power to fix the time when an application for probation should be heard and determined. It was provided that "the court, upon application of the defendant or of the people or upon its own motion, may summarily or at a time fixed, hear and determine . . . the matter of probation," and that "at said time or times fixed by the court, the court may hear and determine such application," with the limitations thereafter provided, none of which is applicable to this case. Assuming that there may be doubts as to the exact extent of the effect of the quoted language of the amendments, such doubts should be resolved in favor of an enlarged power, for the reason that the statute is remedial in its nature and should be liberally construed in favor of the application for probation. This construction does no violence to the judgment of the majority in the Beggs case, which appears to have been a correct solution of the problem on the then state of the law.

SEAWELL, J., Concurring.—I concur. I am disposed to agree with Mr. Justice Shenk's treatment of the amendments of the Probation Act and their bearing upon the Beggs case. In short, if the legislature by its repeal of language which left the law precisely where it was at the time the Beggs case was decided intended thereby to change the law as declared by the Beggs case, why did it not make some express declaration to that effect? The difficulty I find in bringing myself to the view expressed in the main opinion as to the significance of the changes made in the law lies in the fact that if the legislature of this state was mindful that the doctrine announced in the Beggs case was in conflict with other jurisdictions, as suggested in the main opinion, and its purpose by amending the law was to bring this state within the rule of decisions of other jurisdictions, as argued in the main opinion, why did it not by unmistakable language fully and definitely complete its purpose?

I am, however, inclined to liberalize the law to the extent that the motion for probation may be entertained by the trial court at any time before execution of the sentence.