[Crim. No. 5514. Second Dist., Div. Three. May 8, 1956.]

THE PEOPLE, Respondent, v. AL E. FENTON et al., Appellants.

Zimmerman, Kelly & Thody, Harold J. Ackerman, Stanley C. Poster and Matthews & Hill for Appellants.

Edmund G. Brown, Attorney General, and James C. Maupin, Deputy Attorney General, for Respondent.

SHINN, P. J.—Al E. Fenton, Bert B. Lewis, James F. Watts and Frank A. Engle were accused by indictment of criminal conspiracy to commit grand theft; in a second count of the indictment they were charged with grand theft in that they stole from Standard Oil Company of California gasoline of the value of $1,600. The indictment alleged that Lewis had previously suffered a conviction of burglary, which he admitted.

Pursuant to stipulation an information was filed charging Fenton with the offense of receiving stolen property, namely, gasoline stolen from Standard. Fenton pleaded not guilty; trial by jury was duly waived; the cause was submitted upon an agreed statement of facts. In open court defendant, represented by competent counsel, and the district attorney, stipulated that one Edward William Huff, a truck driver, stole from Standard Oil Company a tank truck load of gasoline which he unloaded into gas tanks of Fenton, who received the same knowing that it was stolen property and that he received the same for his own gain and to deprive the owner thereof. The stipulation was oral and was assented to by defendant as well as by his counsel. There being no other evidence, the cause was submitted, defendant was adjudged guilty and the indictment above mentioned was, as to Fenton, dismissed on motion of the district attorney. Defendant made an application for probation, which was denied, and he was sentenced to state prison. He made a motion for new trial which was denied, and he appeals from that order and also from the judgment.

The grounds of appeal are that the trial court committed error in the following particulars: 1. In denying the motion for new trial; 2. In denying the application for probation.

The precise point relevant to the grounds upon which the motion for new trial was urged is that there was newly discovered evidence which, if given proper effect, required the court in its discretion to grant a new trial. Prefacing a more particularized statement, mention should be made of certain

facts which the court had for consideration. Standard Oil Company, suspecting that thefts of gasoline were being committed at its plant at El Segundo in Los Angeles County, instituted an investigation consisting of surveillance of the loading of tank trucks at the plant and the disposition that was being made of the loads. It was in the course of this investigation that Huff, driving a tank truck for Allyn Tank Lines, was detected loading his truck with gasoline with the assistance of defendant Watts, an employe of Standard, and delivering the same to the tanks of Fenton at his service station. In his first report, the deputy probation officer stated: "From the District Attorney's file and from other sources the probation officer discovers that after the operation was revealed to the authorities by Mr. Huff, the Los Angeles County Sheriff was brought into the picture, established a stakeout or surveillance at the El Segundo plant in May 1954 and continued this in operation up until July, that is, particularly July 4, 1954, at which time a tank and trailer, illegally loaded, were followed by the authorities until the gasoline was dumped in one of this defendant's service stations." In a supplemental report the probation officer stated that he was in error in that he had ascertained later that the stakeout or surveillance was not established by the sheriff; that the sheriff did not have knowledge of the identity of the persons in the operation until the events of July 4, 1954, which was the date alleged in the indictment and the information as the date when Fenton received the gasoline. Defendant calls attention to the fact that the testimony of Huff before the grand jury did not disclose that Standard knew that he, Huff, had been stealing gasoline and that Standard initiated or participated in the investigation that led to the discovery of the theft of the gasoline that Fenton received.

Defendant argues that if Standard had knowledge that Huff was stealing gasoline and joined in surveillance of the plant it thereby consented to thefts by Huff and that this "would establish a complete defense in law to the crime charged against the defendant herein." He theorizes that if Huff took the gasoline through prearrangement with the company the taking would not have amounted to theft and he would not be guilty of having received stolen property. He then argues that if he had known of the knowledge and participation of the company in the investigation he would not have stipulated that the gasoline he received had been

stolen, and that for this reason it was the duty of the court to grant his motion for new trial.

It is unnecessary to pursue the vague line of argument advanced by appellant. No affidavit was filed by Fenton, his attorney or anyone else in support of the motion for new trial. Section 1181, subdivision 8, of the Penal Code provides that when a motion for a new trial is made upon the ground of newly discovered evidence the defendant must produce at the hearing, in support thereof, the affidavits of the witnesses by whom such evidence is expected to be given. Defendant was allowed 21 days in which to produce affidavits.

The court was asked to assume material facts as to the existence of which there was no showing of any sort. The claim that defendant first learned of the previous knowledge of Standard from the supplemental probation report is merely an unsupported assertion. A Mr. Strong, special agent of Standard in police work, had testified to that fact before the grand jury. It did not appear of record that the fact of previous knowledge of Standard was unknown to defendant; the record indicated the contrary. The claim of appellant that the gasoline was taken with the consent of the company assumes that someone in the company having authority had arranged with Huff that he should take it and thus actively participated in a manner that would rob the act of the essential element of taking the property against the will of the owner. (*People* v. *Werner*, 16 Cal.2d 216 [105 P.2d 927].) For if the company merely remained passive as an observer of what might go on, the claim that consent was given would not be well-founded. (*People* v. *Hanselman*, 76 Cal. 460 [18 P. 425, 9 Am.St.Rep. 238].) There was no showing whatever that upon a retrial evidence could be produced that the company had arranged with Huff for the taking of the tankful of gasoline. Having produced no affidavits, and without any showing that they might be produced if further time were allowed, defendant was in no position to urge newly discovered evidence as a ground of his motion for new trial. We are of the opinion that the court would not have been justified in granting a new trial.

The next claims of error relate to the court's denial of appellant's application for probation. It is argued that the court erred "in denying, in effect, that the defendant came within the purview of Section 1203 of the Penal Code." Cited in support of this ambiguous statement is *People* v. *Jones*, 87 Cal.App. 482 [262 P. 361]. In that case defendant being

eligible for probation was denied the right to file an application for the reason that the trial court ruled that probation was available only to defendants who pleaded guilty, and refused to permit an application to be filed. The order was reversed with directions to permit an application to be filed and to act upon it. We have no such situation here. The probation officer filed a full report; a strong showing for probation was made on behalf of defendant and the matter received the court's careful consideration.

It is contended that the report of the probation department was filled with hearsay assertions and was replete with argument detrimental to the appellant, all of which unduly influenced the court to withhold probation.

It is the duty of the probation officer upon a reference to "make an investigation of the circumstances surrounding the crime and of the prior record and history of the defendant" and report to the court the facts found with his recommendation. (Pen. Code, § 1203.)

The probation officer here went far afield. The report stated: "The probation officer understands that the California State Board of Equalization has arrived at a figure of 2,420,000 gallons taken illegally from Standard Oil and received by Fenton and Lewis. The state authorities have declined to tell the probation officer the method by which they have arrived at the above figure for this would give unnecessary advantage to the defense. . . . Standard Oil states further that while it is true that the whole oil industry is watching the present case with interest, the victim does not want to appear aggressive. . . . Since this matter has received such general publicity and will probably receive more, the attitude of the general public and more particularly of the oil industry should be considered. Along this line, it seems the facts of the offense are so grave and the quantity of gasoline taken is so large that a probation program is not in order. It is not alone the question of preventing the defendant from doing the same kind of thing in the future for this would probably be impossible anyway; but the offense that has been committed is, in the opinion of the probation officer, too big to be fitted into the probation bracket." In a supplemental report the officer stated that he had received a letter from appellant's wife which closed with the statement: "I beseech you Mr. Coyner, and beg of you to go over your report again and eliminate all the plain gossip that the

State Bd of Equalization, Standard and Mr. Huff have given you.'' The supplemental report stated that although defendant had refused at first to furnish a financial statement he had now done so and that his attitude at this point should probably be considered satisfactory. It stated that the officer had based his recommendation for denial of probation upon the testimony of Huff before the grand jury, much of which was summarized in the original probation report. In the supplemental report he also stated his belief in the accuracy of the testimony of Huff. No change was made in the original report except in the particular we first mentioned. It would appear that the recommendation against probation was influenced by extravagant and unsupported statements with respects to thefts in enormous amounts, and by what the deputy thought the reaction of the public and the oil industry would be if probation should be granted. And there was an apparent effort to influence the decision of the court by argument, which is not to be approved.

In other respects the reports were fair. They spoke highly of appellant's past record and stated ''The probation officer has received and attached hereto character letters of unusually fine qualities from the following persons,'' listing authors of some 30 letters, and the report closed with the statement that the officer did not believe that appellant, if granted probation, would commit any further offense.

But we must reject the contention the court was influenced by the improper statements and arguments in the reports. While the matter was being discussed the court expressed criticism of the report in these particulars and we think it is reasonable to suppose that the recommendation against probation was weakened, in the mind of the court, by some of the faulty reasoning upon which it was based.

█ In support of the contention that defendant was deprived of some right in the probation hearing it is argued that the court should have determined the matter solely upon the basis of the stipulated facts, without regard to the surrounding circumstances, and especially those disclosed by the testimony of Huff and others before the grand jury; and that because that testimony was considered and was detrimental to defendant he was deprived of a fair and impartial hearing of his application. The contention is not sustainable. The motions of Fenton, Lewis and Watts for new trials and the hearings on their application for probation were considered on the same day. The cases of Lewis, Watts

and Engle had been submitted upon a stipulation of facts, certain exhibits and the testimony of one Morrison which related a confession by Watts which implicated Lewis, but not Fenton. Lewis and Watts had been found guilty only of grand theft and Engle had been found not guilty. The court had read the testimony of Huff and Morrison before the grand jury and so stated. The testimony of Huff tended to implicate Fenton, Lewis and Watts in a conspiracy and accused Fenton of having received four or five loads of stolen gasoline from Huff. This testimony was properly considered. The powers of the court in the consideration of the matter of probation are exceedingly broad with respect to the scope of the court's inquiry as to the circumstances of the offense and the record of the applicant for leniency. It was understood that the court would familiarize itself with the evidence before the grand jury. It had been so stipulated in the cases of Lewis and Watts and no objection was raised by Fenton to the consideration of that evidence upon his application. It is probably true, as defendant contends, that the court believed that Lewis and Watts and, to a lesser extent, Fenton himself, had been engaged in systematic thefts of gasoline from Standard. But a proper and sufficient inquiry into the circumstances of the offense could not be foreclosed by stipulations of fact, amounting to confessions, which resulted in convictions of offenses other than conspiracy. No doubt it was the hope of defendants and their attorneys that the court would ignore all facts tending to prove that the offenses admitted by the defendants were not isolated transactions but were a part of a series of such transactions. But it was a vain hope that in considering the applications the court would ignore the fact, certain to be developed in the course of a proper investigation, that defendants had probably been guilty of similar acts. By their admissions which led to their convictions and by their applications for probation the several defendants created the condition of which they now complain. Moreover, they assume they would have been granted probation if there had been no evidence of their guilt of offenses other than the ones they admitted. The record contains no statement of the court tending to support that assumption. The application of Fenton was vigorously pressed, was given lengthy consideration by the court and the conclusion reached by the court was, in our opinion, the exercise of sound judicial discretion.

## The Appeals of Lewis and Watts

The ground of appeal being the same the two appeals will be considered together.

After the trial had begun it was adjourned and a conference was had with the judge in chambers. Present were the trial judge, the attorneys for Lewis, Watts and Engle and representatives of the district attorney. The conference was not reported. The purpose of defense counsel was to arrange for submission of the case, as to the charge of grand theft alone, upon the evidence before the grand jury, without defense evidence, and to obtain a dismissal of the conspiracy charge. Mr. Poster, attorney for Lewis, made a persistent effort to obtain a commitment from the judge as to whether probation would be granted and what the punishment would be. After that conference the jury was discharged, a stipulation of facts was entered into which could only result in conviction of Lewis and Watts, the case was submitted, Lewis and Watts were found guilty, the conspiracy count was dismissed and Engle was acquitted. Applications for probation were made and probation reports submitted. On the day preceding sentence another conference was had in chambers which was reported. This consisted of a discussion between Mr. Poster and the judge as to what had been said at the first conference. Mr. Poster repeatedly asserted that at the first conference he gained the impression from the judge's remarks that the court would be lenient in its sentence, he reported that fact to his client, who was induced thereby to submit the case under the grand theft charge upon stipulated facts.

It would serve no useful purpose to relate the discussion between Mr. Poster and the judge concerning what was said at the former conference. Although Mr. Poster disclaimed an intention to plead for leniency it was his evident purpose to influence the court to grant Lewis' application for probation because of his interpretation of the judge's statements at the unreported conference. The judge consistently denied having intimated what the sentence might be and insisted that he had said nothing whatever to encourage a belief that leniency would be shown. Neither counsel for Lewis nor Watts made any request to be released from their stipulation.

Upon this record Lewis and Watts claim the benefit of the rule which they state as follows: "Where a defendant in a criminal action has pleaded guilty (or has allowed him-

self to be found guilty) in reliance upon false factual representations that the trial judge, or some responsible state officer, has promised a lesser sentence than might otherwise be imposed, such plea (or judgment) will be set aside, even though such representations were made by the defendant's own attorney, if the same are apparently substantially corroborated by acts or statements of a responsible state officer." (Citing cases.)

The grounds upon which a new trial may be granted are stated in section 1181, Penal Code. They do not include the ground that in the course of the trial the defendant was led into a stipulation from which he should justly have been released.

If it be assumed that on an appeal from a judgment the court will consider the point that through some fault of the trial court he entered into a stipulation detrimental to his interests, even though at the trial he did not seek release from the stipulation, the merits of the point cannot be fully considered on the present record. It is obvious that that record, as to foundational facts, is a mere vacuum, and that it does not sustain the contention of the defendants. It does relate a colloquy between Lewis' attorney and the court as to what had taken place at the unreported conference in chambers but the material facts, such as the recollection of the participants as to what was said, the interpretation counsel placed upon the statements of the court, what was reported to Lewis by his attorney, and as to what induced Lewis to consent to the stipulation—these are entirely without verification and the subsequent unsworn statements of the attorney relative thereto are deserving of no consideration. We hold that in the record that is before us there is nothing of substance or verity which tends to support the contention that defendants Lewis or Watts consented to the stipulation under mistake or misunderstanding.

It is suggested in one of the briefs that perhaps "this court could use this case as the basis for laying down a rationale of procedure to be followed by courts" in such matters. We believe we should avoid any misunderstanding of our opinion by making clear our belief that a conference of all counsel and the court, duly reported, respecting the court's attitude toward accepting a plea of guilty, or its equivalent, is of every day occurrence and often a necessary step in the disposition of criminal cases. But when inex-

perienced attorneys overstep the bounds of professional ethics and accepted court procedure by endeavoring to make a "deal" with the court as to punishment, we can only refer to the remarks of the patient but harassed judge when he found himself confronted with that situation and expressed himself as follows: "This type of business only leads me to a conclusion that I formed one time, and deviated from, that a judge should never have any conferences with attorneys at all, because this is just what you are faced with when you do, see. Somebody is always willing at some time along the line to put another interpretation on the conference." We may add that there were experienced and competent attorneys in the case who realize the futility as well as the impropriety of endeavoring to obtain leniency for a client by prearrangement with the court. The above remark was not addressed to them.

The judgments as to the three appellants and the orders denying their motions for a new trial are affirmed.

Wood (Parker), J., and Vallée, J., concurred.

Petitions for a rehearing were denied May 21, 1956, and the petitions of appellants Al. E. Fenton and Bert B. Lewis for a hearing by the Supreme Court were denied June 6, 1956.