THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* RAFAEL IRLANDA RIVERA, Defendant and Appellant.

No. CR-64-455.      Decided October 14, 1965.

---

[1] See also, *Jackson* v. *United States*, 34 U.S. L.Week 2153 and *Powell* v. *United States*, 34 U.S. L.Week 2129.

*William Morales Torres* for appellant. *Rodolfo Cruz Contreras, Acting Solicitor General,* and *Nilita Vientós Gastón, Assistant Solicitor General,* for The People.

MR. JUSTICE RAMÍREZ BAGES delivered the opinion of the Court.

Appellant Rafael Irlanda Rivera was accused and convicted of grand larceny and ordered to serve one to three years in the penitentiary. On appeal he assigns that the trial court erred in finding him guilty since the verdict is contrary to law and the evidence presented. He maintains that there exist certain discrepancies in the evidence which should have given rise to a reasonable doubt of his guilt. Furthermore, as a second error he assigns that, anyway, he did not take the property consisting of a $500 bill against the will or without the consent of its lawful owner.

Pursuant to § 426 of the Penal Code, 33 L.P.R.A. § 1681, larceny is the felonious stealing, taking, carrying, leading, or driving away the personal property of another. We have decided that this crime is committed at the very moment of the taking of the property, hence the taking may endure only for an instant; that the mere possession of the stolen property by defendant is not sufficient but that the same, coupled with other circumstances, may be sufficient; that the intent to deprive the owner permanently of the property stolen may be inferred from the surrounding circumstances; that it is not necessary that the person from

whom the property is stolen should have the general owner-ship, or even that he should have the right of possession, nor that the thief should know who the owner is; the possession of the thing stolen is the essential element of the crime. *People* v. *Rosario*, 80 P.R.R. 604 (1958); *People* v. *López*, 42 P.R.R. 948 (1931); *People* v. *Laguer*, 42 P.R.R. 878 (1931); *People* v. *Nieves Alvelo*, 89 P.R.R. 46 (1963); *People* v. *Meléndez*, 64 P.R.R. 785 (1945); *People* v. *Acevedo*, 43 P.R.R. 325 (1932); *People* v. *Domínguez*,[1] 36 P.R.R. 419 (1927); *People* v. *Santiago*, 28 P.R.R. 219 (1920). Although it is necessary to prove that the taking was performed against the will of the owner of the property or against his consent, the fact that defendant unlawfully appropriates a lost property to his own use constitutes larceny. Taking the property notwithstanding the passive submission of the owner is also larceny, as long as, (1) there is no indication that he wishes it taken; (2) and no knowledge by taker that the owner wishes it taken; (3) that there is no natural understanding between the two on the appropriation; and (4) no active measures of inducement are employed for the purpose of leading into temptation. 2 Wharton, Criminal Law 99, § 461 (Anderson Ed.); *People* v. *Hanselman*, 76 Cal. 460 (1888); *Carnes* v. *State*, 113 S.W.2d 542 (Texas 1938); *People* v. *Frank*, 27 N.Y.S.2d 227 (1941); *Hagan* v. *State*, 134 P.2d 1042 (Okl. 1943); *People* v. *Fenton*, 141 Cal. App.2d 357, 360 (1956).

---

[1] The fact of the possession plus the sale or pawning of the thing stolen or trying to take one of these steps, plus any slight corroborative evidence of any inculpatory circumstance tending to show the guilt of defendant, is sufficient to warrant a conviction of larceny. *People* v. *Gibson*, 116 Pac. 987 (Cal. 1911); *People* v. *Farrell*, 227 Pac. 210 (Cal. 1924); *People* v. *Crotty*, 233 Pac. 395 (Cal. 1925); *People* v. *Rutland*, 261 P.2d 735 (Cal. 1953); *People* v. *Lancelloti*, 305 P.2d 926 (Cal. 1957); *People* v. *Ransome*, 180 Cal. App.2d 140 (1960); *People* v. *Phelps*, 192 Cal. App.2d 12 (1961); *People* v. *Ford*, 200 Cal. App.2d 905 (1962).

For the purpose of considering the errors assigned we make the following summary of the evidence which consisted of the testimony of Santos Ortiz Cartagena, owner of the *cafetín* in Orocovis where the facts of the case occurred and the persons attending said establishment in the night of the event: Saulo M. Jiménez, Postmaster of said town, Ángel Miranda Colón, Antonio Pérez and Jesús M. Pérez, and policeman Pedro Rodríguez Ramírez.

Ortiz testified that he saw appellant in his *cafetín* between 11:00 and 12:30 p.m. on December 12, 1960, sitting in front of the bar together with the other aforementioned customers; that the witness waited on them from the other side of the bar; that Antonio Pérez proposed to buy the juke box from him for $500 and defendant answered "tomorrow we will do business", that Pérez went for the money and five minutes later he returned with a five-hundred-dollar bill in his hand; that as Ortiz did not take the bill, Pérez passed it to Jiménez; that the latter put it on the bar saying that if Ortiz did not do business he was not going to leave it there; that Pérez said that he had to take it; that then appellant took the bill, turned it over in his hand, folded it and put it in his shirt pocket under the sleeveless sweater he was wearing; that Jiménez requested appellant to deliver the bill to Pérez and he answered "it is a joke", that he did not have it; that Jiménez told Pérez "it is not a joke. Give him the bill which you took yourself"; that appellant answered that he did not have it and then Jiménez sent Jesús Pérez for the police; that appellant left the establishment notwithstanding he was requested not to do so until the policeman arrived; that when the latter arrived Jiménez explained what had happened and all of them went to police headquarters for the investigation in which the Justice of the Peace of Morovis intervened. On cross-examination he accepted that he took the bill from the bar to look at it since a "five-hundred-dollar bill is seldom seen" and he put it back

on the bar; that appellant took it right away; that Ortiz also requested appellant to deliver the bill to Pérez because they were not going to do business; that when appellant left the *cafetín* Miranda told him: "Feyo, you are not going to get away with that, you have the bill" and that he should not go until the policeman came; that when the latter came they searched for the bill all over the establishment and did not find it.

Saulo Jiménez testified similarly concerning the juke box business; that when Pérez returned with the money he delivered the five-hundred-dollar bill to Jiménez to pass it to Ortiz because Jiménez was closer to the latter; that Ortiz returned the bill right away because he was not going to do business that night; that appellant took it from the bar and the bill disappeared; that then the following dialogue took place between the witness and appellant:

"Feyo, where is the five-hundred-dollar bill?
"What bill?
"The five-hundred-dollar bill.
"What I have here is a two-dollar bill."

Then Jiménez sent for the policeman; that appellant left before the policeman arrived, stating that he only had a two-dollar bill; that all of them went to the police headquarters because the policeman did not come; that the latter had gone to appellant's house to fetch him; he did not see appellant return the bill to any person whatsoever; that the judge took their sworn statements; that he did not return to the *cafetín*; that Pérez did not send for the policeman to witness the juke box transaction; he was outside in the corner about 20 or 25 feet away; he could be seen through the glass window; that as appellant denied he had the bill they searched all through the establishment and it did not appear; that appellant left the *cafetín* when Jiménez sent for the police, although Jiménez said that nobody should go away before the investigation of the disappearance of the bill.

Ángel Miranda Colón testified practically the same as Jiménez. He said that putting the bill on the bar Ortiz said: "Look, give the bill to Santos . . . to Antonio Pérez. I am not going to transact business"; that then appellant took the bill and folded it. Miranda testified the following: (Tr. Ev. pp. 137–138).

"He asked the man [the appellant] for it and he said: 'I do not have the bill'. Saulo said, he said it himself: 'deliver it, you have it. You have it.' Then he said: 'well, we must send for the policeman to make the investigation.' They went for him. Then the policeman did not come to make the investigation. Then Santos said: 'Let us look around here to see if the bill is lost.' . . . Then Saulo (Orta) said: 'We must go to police headquarters.' This man [the appellant] when we talked about the investigation, and sent for the policeman this man went away. Then Saulo said: 'Don't go until the policeman has come to make the investigation.' I myself told him not to go until the investigation was made. The purpose was to make the investigation, to see if the bill appeared and he left before the policeman came."

Miranda says that he testified all this before the Justice of the Peace and when he had finished appellant came and slapped him on his face; that Ortiz did not give the juke box key to Pérez, that appellant took the bill from the bar, folded it "and kept it"; "that he put it in his pocket"; that then Jiménez asked for the bill; that the policeman came to make the investigation before all of them went to the police headquarters and then they searched for the bill all over the place and it did not appear; then they went to the police headquarters.

Antonio Pérez testified that he bought the juke box from Ortiz for $500; that he went for the money and when he returned he delivered the five-hundred-dollar bill to Jiménez to pass it to Ortiz; that it was so done and he knew no more; he admitted having testified before the judge that he had heard that appellant had folded the bill and had put it in

his pocket. He had to be admonished by the court for changing his testimony. He testified that he brought policeman Rodríguez to witness the transaction between him and Ortiz and then the policeman left and then the bill disappeared. The witness contradicted himself on several occasions and furthermore he altered his testimony in several aspects.

Policeman Pedro Rodríguez Ramírez testified for the defense stating that while in front of Ortiz' business he noticed that a transaction for the sale of a juke box between Ortiz and Pérez was being made and the latter was writing something on a piece of paper for Ortiz to sign; that Ortiz gave Pérez the keys of the juke box in consideration for the $500 which he received in a bill of that denomination, which bill Pérez put over the counter saying: "Santos, here are the $500; that Ortiz answered: "take that, take the $500 dollars with you. In the morning I am going to make the transaction. I am not going to make the juke box transaction today"; that he went to police headquarters and Pérez followed about 12 or 15 steps behind him and about 35 to 40 steps behind was appellant; that the latter walked toward the post office and Pérez walked toward police headquarters; that Jesús Pérez overtook this policeman at headquarters and from outside told him the facts about the five-hundred-dollar bill; "that Irlanda Rivera had taken the five-hundred-dollar bill"; that he went to appellant's house and explained to him what had happened and he went to the business with appellant; that there appellant emptied his pockets and he had about $100, a two-dollar bill, and the others did the same; that Santos drew out all the money from the cash register; they searched on the floor; that the five-hundred-dollar bill did not appear; that then they went to police headquarters; that he was in front of the business about 25 feet from the place where the transaction of the juke box was being made; that they were writing on a piece of paper on a table; that Ortiz walked out from behind the counter; that

they tore the piece of paper; that Pérez had identified the paper as the sale contract when he went for the five-hundred-dollar bill; that Pérez put the bill on the bar, that Jiménez took it and gave it to Ortiz; that he does not know what Ortiz did with the bill, because then he went to police headquarters; he testified that appellant was wearing a vest and a long-sleeve shirt and a tie. Witness Jesús Manuel Pérez, on the contrary, reaffirmed that he was wearing a sweater and a short-sleeve shirt and no tie.

After the evidence was introduced, the judge determined that there was uncontroverted evidence on the witnesses' testimony, that the manner of testifying and their behavior merited his credibility, mentioning Ortiz and Miranda to the effect that appellant took the bill, folded it in his hands and put it in his pocket; that he did not believe Pérez' testimony because of the way and manner of testifying and because of his behavior on the witness stand and because he altered his testimony; that he did not believe the testimony of policeman Rodríguez for similar reasons.

■ From the testimony adduced at the hearing of the case and recited above it is evident that the trial court had direct, credible, and abundant evidence to establish defendant's guilt beyond a reasonable doubt and that the discrepancies were limited to small unessential details.

■ It does not appear from the evidence that appellant took the money in question with the consent or knowledge of its owner. It was established that appellant took the five-hundred-dollar bill from the counter of the *cafetín*, folded it and put it in his shirt pocket. Thus, the taking of the property was proved, which is the essential element of the crime of larceny. The criminal intent to deprive the owner of the property stolen permanently is inferred from the fact that appellant not only put the bill in the pocket of his pants but also he refused to return it, although several witnesses

urged him to do so, and he left the establishment in violation of the request that all of them stay there until the policeman arrived and the investigation of the disappearance of the bill started. It is true that neither Ortiz nor Pérez objected to the taking of the bill by appellant. But their silence does not imply that the owner of the bill consented or had knowledge of the theft of said money; first, because appellant was not expected to put the bill in his pocket and keep it; and second, because as soon as he did so, Jiménez, who at the time had the custody of the bill, or at least continued feeling responsible for the same, as well as Ortiz, requested appellant in clear and definite terms to return the bill, and he refused alleging that he did not have it. It being so, the error assigned was not committed.

For the reasons stated the judgment rendered in this case by the Superior Court, Ponce Part, on August 13, 1963, will be affirmed.

Mr. Justice Santana Becerra and Mr. Justice Dávila concur in the result.